UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HOUSTON SPECIALTY INSURANCE
COMPANY

    Plaintiff,

v.                                                                CASE NO:

CONTINUUM HEALTH INNOVATIONS,
LLC,  KIMBERLY ANNE SIBIO,  as the
Temporary Conservator of Gretchen Fortney,
And JAMES FORTNEY

    Defendants.
_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, HOUSTON SPECIALTY INSURANCE COMPANY ("Houston"), files suit against Defendants, CONTINUUM HEALTH INNOVATIONS, LLC ("Continuum"), KIMBERLY ANNE SIBIO, as the Temporary Conservator of Gretchen Fortney ("Sibio"), and JAMES FORTNEY ("Fortney"), and states:

## NATURE OF THE ACTION

Gretchen Fortney murdered her mother after she was released from a mental health care facility. As a result, underlying lawsuits were filed against Continuum alleging Fortney was improperly discharged. In this action, Houston seeks declaratory relief and damages pursuant to 28 U.S.C. §§ 2201 and 2022 regarding its coverage obligations for these underlying lawsuits under a policy that includes a Medical Services Exclusion; and, even if the exclusion does not apply, the Policy

imposes a $50,000 sublimit for any claims involving or arising out of "Bodily Injury".

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of attorney's fees and costs.

2. Venue is proper in this district because the subject underlying lawsuits are pending in this district, the subject insurance policy was issued and delivered to Continuum in this district, and "a substantial part of the events … giving rise to the claim occurred in this district." *See* 28 U.S.C. § 1391(b)(2).

3. All conditions precedent occurred, were performed, or were waived.

## THE PARTIES

4. Houston is a corporation organized and existing under the laws of Texas with its principal place of business in Houston, Texas.

5. Continuum is a domestic limited liability company registered to do business in the State of Georgia with its principal place of business in Fulton County, Georgia.

6. Sibio is a resident of and domiciled in the State of Florida.

7. Fortney is a resident of and domiciled in the State of Georgia.

## FACTUAL BACKGROUND

### *The Underlying Lawsuits*

8. On September 16, 2024, Sibio filed a lawsuit against Continuum, among other defendants, in the State Court of Cobb County, State of Georgia, in Civil Action No. 24-A-4438 ("Sibio Action"). A copy of the operative complaint is attached as Exhibit "A."

9. On September 16, 2024, Fortney also filed a lawsuit against Continuum, among other defendants, in the State Court of Cobb County, State of Georgia, in Civil Action No. 24-A-4442 ("Fortney Action"). A copy of the operative complaint is attached as Exhibit "B."

10. The Sibio Action and the Fortney Action allege nearly identical facts arising out of the care and discharge of Gretchen Fortney ("Gretchen") from Ridgeview (collectively, the "Underlying Lawsuits").

11. Specifically, the Underlying Lawsuits allege that on September 7, 2022, Gretchen was involuntarily admitted to Ridgeview due to her psychiatric disorders preventing her from caring for herself and her demonstrating "behavior that was life-threatening, destructive, or disabling to self or others." (*See* Ex. A, ¶¶ 33, 38, 44; Ex. B, ¶¶ 34, 38, 44).

12. "During Gretchen's first night at Ridgeview, nursing documentation noted that Gretchen was loud and disruptive," and the following morning after

Gretchen's medication was switched by Ridgeview providers, Gretchen was classified "in the highest mental status category: 'extreme.'" (*See* Ex. A, ¶¶ 52-53; Ex. B, ¶¶ 52-53).

13. Thereafter, Gretchen reportedly remained paranoid, delusional, impulsive, aggressive, combative, and threatening, and Ridgeview nurse's notes and evaluations continued to consider Gretchen as a risk through to the night before her discharge. (*See* Ex. A, ¶¶ 62-84, 111; Ex. B, ¶¶ 62-84, 111);

14. On September 24, 2022, the nurse overseeing Gretchen's discharge, Yves Amougou, N.P. ("Amougou"), determined that Gretchen was a "competent adult" and that her family did not need to be contacted before she was discharged. (*See* Ex. A, ¶¶ 112-114; Ex. B, ¶¶ 112-114).

15. Accordingly, Gretchen was discharged on September 24, 2022. (*See* Ex. A, ¶ 115; Ex. B, ¶ 115).

16. Less than a week after Gretchen was discharged, on September 30, 2022, Gretchen had a "psychotic episode and brutally killed, tortured, and sexually assaulted her mother, Martha Fortney." (*See* Ex. A, ¶ 129; Ex. B, ¶ 129).

17. Following this episode, Gretchen was charged with "malice murder, felony murder, aggravated assault, and aggravated sexual battery in connection with the death of her mother." (*See* Ex. A, ¶ 130; Ex. B, ¶ 130);

18. In their respective complaints, Sibio and Fortney allege Martha Fortney's death was a result of the rendering of inadequate medical services to Gretchen and her improper discharge from Ridgeview.

19. Specifically, the Underlying Lawsuits allege that the Ridgeview providers breached their standard of care by the following actions:

- "Discontinuing Geodon, rather than resuming it at the original prescribed dose and titrating as needed;" (Ex. A, ¶139.a.; Ex. B, Ex. A, ¶9)
- "Preparing a treatment plan without gathering the necessary information from Gretchen [], her parents, and her outpatient provider regarding prior medication trials; (Ex. A, ¶139.b.; Ex. B, Ex. A, ¶9)
- "Failing to augment Gretchen's medication regimen with antiepileptic or novel mood stabilizers for mania"; (Ex A., ¶139.d.; Ex. B, Ex. A, ¶9).
- "Discharging Gretchen on September 24, 2022, when it was evident that the hallucinations, delusions, disorganized thoughts, and behaviors that were manifesting at Gretchen's initial presentation had yet to respond to treatment, as evidenced by the daily nursing documentation of these signs, up and until the day before Gretchen's discharge;" (Ex A, ¶139.f.; Ex. B, Ex. A, ¶9.)
- "Failing to utilize a Violence Risk Assessment tool to assess Gretchen's risk of harm to others; (Ex. A, ¶139.h; Ex. B, Ex. A, ¶9.)
- "Failing to consult with [Gretchen]'s parents to ascertain whether she was significantly improved or had returned to her baseline;"(Ex. A, ¶139.i; Ex. B, Ex. A, ¶9.) and
- Asserting that Gretchen was "fully capacitated" and "did not need the involvement of her family or have her family contacted at discharge." (Ex. A, ¶139.j.; Ex. B, Ex. A, ¶9.)

20. The sole allegation against Continuum in the Underlying Lawsuits is for vicarious liability for the "negligent and grossly negligent acts" of Amougou. (*See* Ex. A, ¶152; Ex. B, ¶160).

*<u>The Houston Policy</u>*

21. Houston issued a Miscellaneous Errors and Omissions Liability Insurance Policy to "Continuum Health Innovations, LLC" as the named insured, bearing policy number MEO-HS-0006087-00, with effective dates from January 17, 2024 to January 17, 2025 (hereinafter, "Policy"). A true and accurate copy of the Policy is attached as Exhibit "C."

22. The Policy's declarations indicate Continuum is in the business of providing "Clinical Services Coordination and Back Office Support services."

23. The Policy's principal coverage form provides in relevant part:

> **SECTION I – INSURING AGREEMENT**
>> The **Company** will pay **Claim Expenses** and **Damages** an **Insured** becomes legally obligated to pay as a result of a **Claim** […] alleging a **Wrongful Act** that first occurred after the **Retroactive Date**, and was first disclosed to the **Insured** during the **Policy Period**. …
>
> **SECTION II – DEFINITIONS** …
>
> **B. Bodily Injury** means the physical injury, sickness or disease sustained by a person; death resulting from such physical injury, sickness or disease; and disability, mental anguish, mental injury, emotional distress, pain or suffering, or shock or fright resulting from such a physical injury, sickness or disease.
>
> **C. Claim** means
>> 1. a written demand first received by an **Insured** for **Damages** or non-monetary relief;
>> 2. civil proceeding commenced by the service of a Complaint or similar pleading;
>> 3. an arbitration proceeding commenced by receipt of a demand for arbitration,

against an **Insured** for a **Wrongful Act.**

**Claim** shall also include a written request or agreement to toll or waive a statute of limitations relating to a potential **Claim** described above. …

P. **Professional Services** means those services stated in the Declarations when performed by the **Insured** in the ordinary conduct of the **lnsured's** profession for or on behalf of a customer or client for a fee or other monetary compensation…

Y. **Wrongful Act** means any actual or alleged breach of duty, negligent act, error, omission or **Personal Injury** offense committed by an **Insured** solely in the performance of, or failure to perform, **Professional Services**. …

### SECTION III – EXCLUSIONS

This Policy does not apply to any Claim alleging or any Damages or Claim Expenses arising out of, based upon, relating to, or otherwise attributable to: …

B. **Bodily Injury** or **Property Damage**; …

24. The Policy is modified by the Contingent Bodily Injury Property Damage Sublimit With General Liability Requirement endorsement, Form MP 03 17 08 21, (hereinafter, "Bodily Injury Sublimit Endorsement"), which states as follows:

**CONTINGENT BODILY INJURY PROPERTY DAMAGE SUBLIMIT WITH GENERAL LIABILITY REQUIREMENT…**

A. **SECTION III - EXCLUSIONS** Paragraph B. is amended by addition of the following:

However, this exclusion shall not apply where such **Claim** results from a **Wrongful Act** so long as such **Bodily Injury** or **Property Damage** has arisen out of the rendering of or failure to render **Professional Services** and there is no other insurance policy issued by any insurer applicable to such **Claim**.

**B. SECTION IV - LIMIT OF INSURANCE** is amended by the addition of the following:

Solely with respect to any **Claim** attributable to **Bodily Injury** or **Property Damage**, which is covered as a result of the last paragraph of the **Bodily Injury** and **Property Damage** exclusions (and not otherwise excluded), the maximum Limit of Insurance for all **Claims** in the aggregate shall be **$50,000**. This limit is a sublimit which shall be part of and not in addition to the otherwise applicable Limits of Insurance stated in the Declarations and will in no way serve to increase the **Company's** liability under the Policy.

It is further understood and agreed that any coverage available as a result of the aforementioned **Bodily Injury** and **Property Damage** coverage (and not otherwise excluded), for that portion of any **Claim** attributable to **Bodily Injury** or **Property Damage**, that the **Named Insured** maintain in full force and effect during the **Policy Period** Comprehensive General Liability Insurance, including Products/Completed Operations and Premises/Operations coverage, covering **Bodily Injury** and **Property Damage** in the amount of $1,000,000 aggregate and applying to the **Named Insured's** operations.

25. The Policy further includes the following Medical Services Exclusion,

Form MP 03 25 08 21:

### MEDICAL SERVICES EXCLUSION…
**A. SECTION II - DEFINITIONS**, is amended by addition of the following:

**Medical Services** means the rendering of or failure to render any health care, medical care, or related treatment or services to any individual, including:

1. medical, surgical, dental, psychiatric, mental health, chiropractic, osteopathic, nursing, or other professional health care;
2. the furnishing or dispensing of medications, drugs, blood, blood products, or medical, surgical, dental, or psychiatric supplies,

       equipment, or appliances in connection with such care;

3. the furnishing of food or beverages in connection with such care;
4. the providing of counseling or other social services in connection with such care; or
5. the handling of, or the performance of post-mortem examinations on, human bodies.

**B. SECTION III - EXCLUSIONS** is amended by adding the following:

Any rendering or failure to render **Medical Services**.

26.    Houston is currently defending Continuum in the Underlying Lawsuits under a complete reservation of rights, including the right to seek reimbursement of attorneys' fees and defense costs if no coverage is owed.

## COUNT I - DECLARATORY JUDGMENT
## THAT THE INSURING AGREEMENT HAS NOT BEEN SATISFIED

27.    Houston realleges and incorporates preceding paragraphs 1 through 26 herein.

28.    The Policy's insuring agreement provides that Houston "will pay **Claim Expenses** and **Damages** an **Insured** becomes legally obligated to pay as a result of a **Claim** […] alleging a **Wrongful Act**[.]"

29.    A "Claim" is defined as "1. a written demand first received by an **Insured** for **Damages** or non-monetary relief; 2. civil proceed commenced by the service of a complaint or similar proceeding, . . . against an **Insured** for a **Wrongful Act**."

30. "Wrongful Act" is defined as "as any actual or alleged breach of duty, negligent act, error, omission or **Personal Injury** offense committed by an **Insured** solely in the performance of, or failure to perform, **Professional Services**."

31. "Professional Services" is defined as "those services stated in the Declarations when performed by the **Insured** in the ordinary conduct of the **Insured**'s profession."

32. The Declarations identify the services performed by Continuum as "Clinical Services Coordination and Back Office Support services".

33. Here, the allegations in the Underlying Lawsuits pertain to the rendering of inadequate medical services to Gretchen, which do not fall within the scope of Continuum's "Professional Services" as defined in the Policy.

34. Accordingly, the insuring agreement is not satisfied; and, therefore, Houston owes no duty to defend or indemnify Continuum in the Underlying Lawsuits.

### COUNT II - DECLARATORY JUDGMENT THAT THE MEDICAL SERVICES EXCLUSION APPLIES

35. Houston realleges and incorporates preceding paragraphs 1 through 26 herein.

36. The Medical Services Exclusion bars coverage for any claim "arising out of, based upon, relating to, or otherwise attributable to … [a]ny rendering or failure to render **Medical Services**." (Form MP 03 41 03 23).

37. "Medical Services" is defined, in pertinent part, as the "rendering of or failure to render any health care, medical care, or related treatment or services to any individual including: 1) …psychiatric, mental health, … nursing, or other professional health care; . . . .[or] (4) the providing of counseling or other social services in connection with such care."

38. Here, the allegations in the Underlying Lawsuits pertain to the rendering of inadequate "medical services" to Gretchen.

39. Accordingly, the Medical Services Exclusion applies; and, therefore, Houston owes no duty to defend or indemnify Continuum in the Underlying Lawsuits.

## COUNT III - DECLARATORY JUDGMENT THAT THE BODILY INJURY EXCLUSION APPLIES

40. Houston realleges and incorporates preceding paragraphs 1 through 26 herein.

41. The Policy includes a Bodily Injury Exclusion that precludes coverage for any claim "arising out of, based upon, relating to, or otherwise attributable to … **Bodily Injury**[.]"

42. "Bodily Injury" is defined as "physical injury…sustained by a person; death resulting from such physical injury, . . . and…mental anguish, mental injury, emotional distress, pain or suffering, or shock or fight resulting from such a physical injury."

43. The Bodily Injury Sublimit Endorsement contains an exception to the Bodily Injury Exclusion "where such **Claim** results from a **Wrongful Act** so long as such **Bodily Injury** or **Property Damage** has arisen out of the rendering of or failure to render **Professional Services** and there is no other insurance policy issued by any insurer applicable to such **Claim**." (Form MP 03 17 08 21).

44. Here, the Underlying Lawsuits allege Gretchen violently attacked and killed her mother.

45. As it is alleged that Gretchen inflicted physical injury upon her mother that resulted in her mother's death, which is "Bodily Injury," the Bodily Injury Exclusion applies.

46. Because the "Bodily Injury" alleged does not arise out of "Professional Services" as defined by the Policy and because there appears to be Commercial General Liability coverage applicable to the Underlying Lawsuits, the exception to the Bodily Injury Exclusion does not apply.

47. Accordingly, as Bodily Injury Exclusion applies and since the exception to the exclusion is not implicated, Houston owes no duty to defend or indemnify Continuum in the Underlying Lawsuits.

### COUNT IV - DECLARATORY JUDGMENT THAT, EVEN IF THERE WAS COVERAGE, THE BODILY INJURY SUBLIMIT APPLIES

48. Houston realleges and incorporates preceding paragraphs 1 through 26 herein.

49. The Policy includes a Bodily Injury Exclusion that precludes coverage for any **claim** "arising out of, based upon, relating to, or otherwise attributable to … **Bodily Injury**[.]"

50. The Bodily Injury Exclusion, per the Bodily Injury Sublimit Endorsement, includes an exception "where such **Claim** results from a **Wrongful Act** so long as such **Bodily Injury** or **Property Damage** has arisen out of the rendering of or failure to render **Professional Services** and there is no other insurance policy issued by any insurer applicable to such **Claim**." (Form MP 03 17 08 21).

51. For such claims that fall within the exception to the Bodily Injury Exclusion, "the maximum Limit of Insurance … in the aggregate shall be $50,000."

52. Here, the Underlying Lawsuits arise out of "Bodily Injury" as Gretchen violently attacked and killed her mother.

53. Accordingly, even if the allegations in the Underlying Lawsuits fall within coverage and within the exception to the Bodily Injury Exclusion, the Underlying Lawsuits would only be subject to an eroding $50,000 sublimit.

## **REQUESTED RELIEF**

**WHEREFORE**, Houston respectfully requests this Court:

 a. Take jurisdiction and adjudicate the rights of the parties under the Policy;

 **b.** Declare that Houston has no obligation to defend or indemnify Continuum in the Underlying Lawsuits under the Policy;

 **c.** Declare Houston is entitled to all attorneys' fees and defense costs incurred defending Continuum in the Underlying Lawsuits;

 **d.** Alternatively, declare that the total available coverage for the Underlying Lawsuits is $50,000;

 **e.** Award Houston all costs it incurred to prosecute this action; and

 **f.** Award such other and further relief as this Court deems just and proper.

Respectfully submitted, this 21st day of March, 2025.

        */s/ Junaid N. Savani*
        **JUNAID N. SAVANI**
        Ga. Bar No. 309992
        Junaid.Savani@KennedysLaw.com
        Kennedys CMK LLP
        1111 Brickell Avenue, Suite 1300
        Miami, FL 33131
        Tel: (305) 371-1111

        *Attorneys for Plaintiff*
        *Houston Specialty Insurance Company*

## **CERTIFICATE OF SERVICE**

I CERTIFY that on March 21, 2025, this document was electronically filed with the Clerk of Court using the E-filing Portal and served on all counsel of record and pro se parties via transmission of Notices of Electronic Filing generated by the E-filing Portal.

>*/s/ Junaid N. Savani*
>**JUNAID N. SAVANI**